**EXHIBIT**

**1**

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| | |
|---|---|
| SHANNON HARRIS, individually and by and through her minor children C.H. and D.H. 3117 Holicong Road Doylestown, PA 18902, | IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA |
| JAMIE WALKER, individually and by and through her minor children C.W., D.W. and M.W. 118 Shady Hill Drive Chalfont, PA 18914, | CIVIL ACTION – LAW No. 2021-02825 |
| TIMOTHY TRESSLER, individually and by and through his minor child S.T. 26 Patriot Drive Chalfont, PA 18914, | |
| CHRISTOPHER DOEBLER, individually and by and through his minor children M.D. and A.D. 114 Glennbrook Court Chalfont, PA 18914, | |
| Plaintiffs, | |
| v. | |
| CENTRAL BUCKS SCHOOL DISTRICT, 20 Weldon Drive Doylestown, PA 18901 | |
| Defendants. | |

## RULE TO SHOW CAUSE

AND NOW, this _____ day of _____, 2021, upon consideration of the attached

Complaint for Declaratory, Injunctive and Mandamus Relief, it is hereby **ORDERED** and

**DECREED** that:

1

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

1.     A Rule is issued upon Defendants to show cause why the Petitioners are not entitled to the relief requested;

2.     The Defendants may file an Answer to the Petition on or before _____, 2021;

3.     In the event of response, the Complaint shall be decided under Pa.R.C.P. 206.7 and Bucks County Rule of Civil Procedure No. 208.3(b);

4.     Depositions shall be completed within _____ days of the response; and

5.     Notice of entry of this Order shall be provided to all parties by the Plaintiffs.


BY THE COURT:


_____, J.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| | |
|---|---|
| SHANNON HARRIS, individually and by and through her minor children C.H. and D.H.<br>3117 Holicong Road<br>Doylestown, PA 18902, | IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA |
| JAMIE WALKER, individually and by and through her minor children C.W., D.W. and M.W.<br>118 Shady Hill Drive<br>Chalfont, PA 18914, | CIVIL ACTION – LAW<br><br>No. 2021-02825 |
| TIMOTHY TRESSLER, individually and by and through his minor child S.T.<br>26 Patriot Drive<br>Chalfont, PA 18914, | |
| CHRISTOPHER DOEBLER, individually and by and through his minor children M.D. and A.D.<br>114 Glennbrook Court<br>Chalfont, PA 18914, | |
| Plaintiffs, | |
| v. | |
| CENTRAL BUCKS SCHOOL DISTRICT,<br>20 Weldon Drive<br>Doylestown, PA 18901 | |
| Defendants. | |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE GO TO OR TELEPHONE THE OFFICES SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**

**PA Bar Association: www.pabar.org**

LAW OFFICE OF TUCKER R. HULL, LLC

By:   */s/ J. Chadwick Schnee*
      J. Chadwick Schnee, Esquire (PA 306907)
      Law Office of Tucker R. Hull, LLC
      108 W. Main Street
      P.O. Box 330
      Annville, PA  17003
      (717) 685-7947
      Fax: (717) 685-7942
      chadwick@tucker-hull-law.com
      *Counsel for Plaintiffs*

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

J. Chadwick Schnee, Esquire (PA 306907)
108 W. Main Street
P.O. Box 330
Annville, PA  17003
(717) 685-7947
Fax:  (717) 685-7942
chadwick@tucker-hull-law.com                     *Attorney for Plaintiffs*

| | |
|---|---|
| )<br>SHANNON HARRIS, individually and )<br>by and through her minor children C.H. )<br>and D.H. )<br>3117 Holicong Road )<br>Doylestown, PA 18902, )<br> )<br>JAMIE WALKER, individually and by )<br>and through her minor children C.W. )<br>D.W. and M.W. )<br>118 Shady Hill Drive )<br>Chalfont, PA 18914, )<br> )<br>TIMOTHY TRESSLER, individually )<br>and by and through his minor child )<br>S.T. )<br>26 Patriot Drive )<br>Chalfont, PA 18914, )<br> )<br>and )<br> )<br>CHRISTOPHER DOEBLER, )<br>individually and by and through his )<br>minor children M.D. and A.D. )<br>114 Glennbrook Court )<br>Chalfont, PA 18914, )<br> )<br>                                        Plaintiffs, )<br>v. )<br> )<br>CENTRAL BUCKS SCHOOL )<br>DISTRICT, )<br>20 Weldon Drive )<br>Doylestown, PA 18901 )<br> )<br>                                        Defendants. )<br> ) | IN THE COURT OF COMMON PLEAS OF<br>BUCKS COUNTY, PENNSYLVANIA<br><br><br><br><br>CIVIL ACTION – LAW<br><br>No. 2021-02825 |

5

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF**

AND NOW COMES Plaintiffs Shannon Harris, individually and by and through her minor children C.H. and D.H.; Jamie Walker, individually and by and through her minor children C.W., D.W. and M.W.; Timothy Tressler, individually and by and through his minor child S.T.; and Christopher Doebler, individually and by and through his minor children M.D. and A.D. (collectively, "Plaintiffs"), who, by and through their undersigned legal counsel, and files this action in the nature of a Complaint for Declaratory, Injunctive and Mandamus Relief, averring as follows:

## PARTIES

1.     Plaintiff Shannon Harris is a citizen, taxpayer and registered voter residing within the Central Bucks School District ("District") and brings this action on her own behalf and on behalf of her minor children C.H. and D.H.

   a.   During the 2020-2021 school year, C.H. participated in sports in the District, which required masking during sports.

   b.   While working out in the weight room in May of 2020 while wearing a mask, C.H. developed a migraine significant enough that it required transporting C.H. to the local hospital.

   c.   C.H. also has a philosophical objection to the Order, as, given the 99.997% survival rate to COVID-19 in his age group, C.H. believes that masks are being used as a control mechanism over the population.

   d.   D.H. has been diagnosed with anxiety, as reflected in his Section 504 Plan with the District.

   e.   The District's changing masking requirements has exacerbated D.H.'s anxiety.

6

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

    f.   Additionally, the District's requirement to wear masks has impacted D.H.'s ability to learn in the classroom because D.H. has hearing difficulties.

    g.   S.H., C.H., and D.H. also all have religious objections to the requirement to wear masks.

    h.   The Harris family identify as Christian and believe that it is against God's will to wear masks because wearing masks interferes with their religious duty to spread the word of God and forces them to participate in a satanic ritual.

    i.   During the 2020-2021 school year, the Harris family felt tortured by being forced to choose whether to practice their religious beliefs or participate in sports in the District.

    j.   The masking requirement has significantly impacted and continues to impact C.H.'s and D.H.'s ability to participate in school, as they feel the masking requirement imposes a prison-like atmosphere in school that interferes with their ability to pay attention in school, engage in the classroom, and listen to their instructors.

2.    Plaintiff Jamie Walker is a citizen, taxpayer and registered voter residing within the District and brings this action on her own behalf and on behalf of her minor children C.W., D.W. and M.W.

    a.   During the 2020-2021 school year, C.W. and D.W. could not breathe while wearing a mask while attending school in the District.

    b.   As a result, C.W. and D.W. were forced to leave the District solely in order to attend a different school where masks were not required.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

    c.   In July, the District's Board of School Directors voted to make masks optional, and C.W. and D.W. were looking forward to returning to their normal classroom and engaging with their friends for the 2021-2022 school year.

    d.   At the beginning of this school year, the District did not require masks, and C.W. and D.W., like many other students, successfully attended school within the District without wearing masks.

    e.   As the District is now requiring masks for in-person education, and C.W. and D.W. are anxious and depressed at the thought of once again being forced to wear masks that interfere with their breathing.

    f.   M.W. has a philosophical objection to wearing face masks and refuses to attend public school within the District solely because of the requirement to wear masks.

    g.   The masking requirement has significantly impacted and continues to impact C.W.'s, D.W.'s and M.W.'s ability to participate in school for the reasons set forth above.

3.     Plaintiff Timothy Tressler is a citizen, taxpayer and registered voter residing within the District and brings this action on his own behalf and on behalf of his minor child S.T.

    a.   S.T. attends school in the District.

    b.   During the 2020-2021 school year, S.T. experienced anxiety and discomfort as a result of the District's requirement to wear masks.

    c.   The District's mask requirement also impacted S.T.'s ability to effectively communicate with peers and teachers and limited her ability to interact socially with her peers.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

    d.   Early in the 2020-2021 school year, for example, children, including S.T., were segregated into groups while outdoors and instructed to not play with their friends across boundaries created in the playground.

    e.   The District's mask requirement also interfered with S.T.'s breathing.

    f.   The District's mask requirements have also impacted S.T.'s personality.

    g.   Prior to the District's masking requirements, S.T. was outgoing toward adults.

    h.   After the District required masking, S.T. has become sheepish and hesitant toward adults, and no longer makes eye contact with adults.

    i.   The Tressler family also has philosophical objections to the District's masking requirements, as the family believes that masks violate their rights guaranteed under the Pennsylvania and United States Constitutions.

    j.   The masking requirement has significantly impacted and continues to impact S,T,'s personality, social and emotional development, breathing and ability to participate in school.

4.     Plaintiff Christopher Doebler is a citizen, taxpayer and registered voter residing within the District and brings this action on his own behalf and on behalf of his minor children M.D. and A.D.

    a.   M.D. and A.D. both attend school in the District.

    b.   M.D. and A.D. were emotionally and socially impacted by the District's mask requirements during the 2020-2021 school year, as neither child was able to fully connect with their peers and teachers as a result of not being able to see anyone's face.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

c.  While wearing masks in school, both children complained of their masks becoming wet from condensation and mucus, which interfered with their ability to breathe.

d.  As a result of wearing a mask in school, A.D. developed nervous tics that A.D. never previously had.

e.  As a result of the District's mask requirements, M.D. often would be in tears after spending the school day wearing masks.

f.  M.D. regularly suffered from headaches, feelings of elevated body temperature, dizziness and difficulty breathing while wearing a mask in school.

g.   These symptoms as a result of wearing a mask caused M.D. to have difficulty focusing on classroom instruction.

h.  When the District lifted the mask the requirement at the end of the 2020-2021 school year, M.D. was overjoyed and even excited about returning to school during the 2021-2022 school year.

i.  When M.D. learned that the District would once again require masks, M.D. teared up and begged his parents to homeschool him rather than require him to endure masks for another year.

j.  The masking requirement has significantly impacted and continues to impact M..D.'s and A.D.'s ability to participate in school for the reasons set forth above.

5.     The District is a governmental entity governed by the provisions of the Public School Code of 1949, 24 P.S. § 1-101 et seq. and is located within Bucks County at the following address: 20 Weldon Drive, Doylestown, PA 18901.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 42 Pa.C.S. § 931(a).

7.      Venue is proper in this Court pursuant to 42 Pa.C.S. § 7532; 42 Pa.C.S. § 931(c);

Pa. R.Civ.P. 1092 and Pa. R.C.P. 2103.

## NATURE OF THE CASE

8.      Count I of this action seeks a declaratory judgment pursuant to 42 Pa.C.S. § 7531

et seq. that Defendants lack the legal authority to require students to wear masks during in-person

education, to require students wear masks while riding on school buses in the absence of an order

requiring masking issued by Bucks County Health Department ("BCHD").

9.      Count II seeks a declaratory judgment pursuant to 42 Pa.C.S. § 7531 et seq. that

Defendants lack the legal authority to require students to wear masks during in-person education

or while riding on school buses.

10.     Count III seeks a declaratory judgment pursuant to 42 Pa.C.S. § 7531 et seq. that,

to the extent that Defendants have the ability to require masks, religious and/or philosophical

objections to masking requirements must be honored in accordance with the Public School Code.

11.     Count IV of this action seeks a preliminary and permanent injunction in equity

under to Pa. R.C.P. 1531 in order to enjoin Defendants from the enforcement of policy, practice

or health and safety plan that requires students to wear masks during in-person education or on

school buses.

## BACKGROUND

12.     A novel coronavirus emerged in Wuhan, China, began infecting humans, spread

throughout the world and is known to have the potential to cause Coronavirus Disease-2019

("COVID-19") in humans.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

13.     In response to fear of the spread of COVID-19, the Pennsylvania Office of the Governor declared a disaster on March 6, 2020. The March 6, 2020 disaster declaration is attached hereto as Exhibit A.

14.     Since the end of the 2020-2021 school year, the Commonwealth's disaster declaration has ended. *See* House Resolution 106 of 2021.

15.     Under DPCL, the Pennsylvania Department of Health has the responsibility for disease prevention and control in areas "not served by a local board or department of health…" 35 P.S. § 521.3(b).

16.     Where a local board or department of health exists, "Local boards and departments of health shall be primarily responsible for the prevention and control of communicable and non-communicable disease, including disease control in public and private schools…" 35 P.S. § 521.3(a).

17.     The General Assembly has declared that the "protection and promotion of the health of the people in the furtherance of human well-being, industrial and agricultural productivity and the national security is one of the highest duties of the Commonwealth," and that these duties "can best be achieved by empowering counties to establish county departments of health…" 16 P.S. § 12002.

18.     Counties are able to create local departments of health under the Local Health Administration Law, 16 P.S. § 12001 et seq.

19.     As a result of a 1953 referendum, Bucks County created a health department of health that qualifies as a "local board or department of health" for purposes of the DPCL.

20.     The BCHD possesses the exclusive authority for the prevention and control of COVID-19 within school districts within Bucks County. 35 P.S. § 521.3(a); 16 P.S. § 12010.

21.     The Pennsylvania Department of Health **only** has the ability to take actions with respect to disease prevention within Bucks County "[i]f the secretary finds that the disease control program carried out by any local board or department of health is so inadequate that it constitutes a menace to the health of the people within ... the municipalities served by the local board or department of health." 35 P.S. § 521.3(c).

22.     The Pennsylvania Department of Health has not made a finding that the Department is carrying out an "inadequate" disease control program that "constitutes a menace to the health of the people within" Bucks County.

23.     The BCHD has not issued an order requiring students in Bucks County to wear masks during in-person education or on school buses.

24.     Instead, on or about August 15, 2021, the BCHD has only recommended – but does not require – that students attending schools in Bucks County wear masks.  The County guidance is attached hereto as Exhibit B.

25.     The BCHD took no position with respect to requiring masks on school buses, stating "The CDC has issued an order that requires masks/face coverings to be worn on all forms of public transportation.  Each school district must work with their solicitor to interpret this order and its applicability."  *See* Exhibit B.

26.     The Department specifically noted that "The effects of ongoing COVID-19 mitigation efforts have led to significant learning loss, mental health issues, and social adjustment difficulties in many students."  *Id.*

27.     On August 31, 2021, the Pennsylvania Department of Health issued an order ("Order") requiring students to wear masks in school, with limited exceptions.  The Order is attached hereto as Exhibit C.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

28.     The Order does not indicate whether it applies to all counties or just counties without a health department.

29.     The Order does "not impact the obligation of any School Entity to comply with the requirements issued by the CC, including the requirements for masking on …. school district transportation." *See* Section 5 of Exhibit C.

30.     By information and belief, Section 5 of Exhibit C is a reference to a January 29, 2021 Order issued by the Centers for Disease Prevention and Control ("CDC Order"), which is attached hereto as Exhibit D.

31.     On August 31, 2021, the District approved a plan implementing "the Masking Order issued by PADOH effective September 7, 2021." *See* District Health and Safety Plan ("Plan"), attached hereto as Exhibit E.

32.     The Plan also states that the District will continue to require masking once the Order expires. *See* Exhibit E at 2-3.

33.     The Plan appears to require masks on school buses. *See generally* Exhibit E at 3 (stating that individuals "working in isolation within … [a] bus/van" will not be required to wear a mask).

34.     Plaintiffs and others have been harmed as a result of the mask requirements in the District. Specifically, Plaintiffs' children and their peers have experienced symptoms of increased depression and anxiety, have difficulty communicating with teachers and others and have had difficulty focusing during classroom instruction as a result of the District's mask requirement. By information and belief, children forced to wear masks in schools have experienced hypoxia, hypercapnia, increased infections, dizziness, headaches, syncope and brain damage as a result of mask requirements.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

35.     By contrast, children have been found to be statistically unlikely to become infected by COVID-19, and there is no evidence demonstrating that forcing children to wear face masks slows or prevents the spread of COVID-19

## COUNT I - DECLARATORY JUDGMENT

### *SEEKING A DECLARATION THAT DEFENDANTS LACK THE LEGAL AUTHORITY TO REQUIRE FACE MASKS WHERE THE BUCKS COUNTY HEALTH DEPARTMENT HAS NOT REQUIRED STUDENTS TO WEAR MASKS*

36.     The averments of the preceding paragraphs are incorporated herein by reference.

37.     Under the Declaratory Judgments Act, courts have the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532.

38.     Section 7541 of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541.

39.     Here, an actual controversy exists with respect to whether the District can require students to wear face masks in the absence of an order issued by the BCHD under the DPCL.

40.     In accordance with the DPCL, only the BCHD, rather than Defendant or the Secretary of Health, has the sole authority with respect to disease prevention and control within Bucks County.  35 P.S. § 521.3(a); 16 P.S. § 12010.

41.     The Secretary of Health has not made a finding that the BCHD's "disease control program carried … is so inadequate that it constitutes a menace to the health of the people within" Bucks County.  35 P.S. § 521.3(c).

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

42.     Because the Secretary of Health has not made a that finding required under 35 P.S. § 521.3(c), the Order does not apply to any student or "School Entity" (as defined in the Order) within Bucks County.

43.     The BCHD has not ordered students to wear masks and, instead, has only recommended that students wear masks.

44.     While the BCHD has specific legal authority to take certain actions with respect to disease prevention in schools, Defendant has no specific legal authority to require students to wear masks.

45.     Defendant "must operate within statutory and constitutional restraints." 22 Pa. Code § 12.3(a).

46.     Defendant "may not make rules that are arbitrary, capricious, discriminatory or **outside their grant of authority from the General Assembly**" 22 Pa. Code § 12.3(b) (emphasis added).

47.     The General Assembly has not vested Defendant with the ability to require students to wear masks.

48.     Defendant lacks the ability to implement any plan for disease prevention and control that requires face masks where the BCHD has not ordered Defendant to require students to wear face masks.

49.     Defendant lacks the ability to implement any plan for disease prevention and control that requires face masks where the General Assembly has not given Defendant the specific power to require students to wear face masks.

50.     Plaintiffs ask for an order declaring that the Plan is invalid to the extent that it requires students to wear masks.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

51.     In the alternative, Plaintiffs asks for an order declaring that only the portions of the Plan related to face masks to be invalid because it imposes a requirement to wear face masks where the BCHD has not ordered Defendants to require face masks in school.

**WHEREFORE,** Plaintiffs respectfully ask this Honorable Court to issue an order declaring that the Plan is invalid because it requires students to wear face masks in the absence of an order issued by the BCHD; or, in the alternative, declaring that only the portions of the Plan that requires face masks are invalid.

## COUNT II – DECLARATORY JUDGMENT

### *SEEKING A DECLARATION THAT THE DISTRICT LACKS THE LEGAL AUTHORITY TO REQUIRE STUDENTS TO WEAR MASKS*

52.     The averments of the preceding paragraphs are incorporated herein by reference.

53.     As a creature of statute, Defendant only has the powers and legal authority granted to them by the General Assembly. *See* 22 Pa. Code §§ 12.3(a)-(b).

54.     The General Assembly has not vested Defendant with any legal authority to require students to wear face masks.

55.     An actual controversy exists with respect to whether Defendant has the ability to force students to wear face masks in the absence of an order from the BCHD.

56.     While Section 2001(i)(1) of the American Rescue Plan Act of 2021 ("ARP"), H.R. 1319, requires schools to develop "a plan for the safe return to in-person instruction and continuity of services" in order to receive grant funding under ARP, the Act does not require any school district to require students to wear masks during in-person education or while riding on school buses.

57.     Similarly, while an Interim Final Rule issued by the U.S. Department of Education states that the plan must have a "description of … policies" regarding masks, the Interim Final

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Rule again does not require grant recipients to institute a policy requiring students to wear masks. *See* 86 FR 21195.

58.     Additionally, the CDC Order does not apply to Defendants, as the CDC only has the power to prevent the spread of diseases 1) "from foreign countries into the States;" or 2) "from one State … into any other State." 42 U.S.C. § 264(a).  Additionally, school buses are not a form of "public transportation" to which the CDC Order could apply under 49 U.S.C. § 5302(14)(B)(iv) ("The term 'public transportation' … does not include … school bus service").  The CDC does not have the power to regulate disease transmission entirely within a single state, let alone within a single school district, and school buses are definitionally not a form of "public transportation."

59.     During his June 22, 2021 confirmation hearing before the Pennsylvania Senate Education Committee, then-Acting Secretary of Education Noe Ortega confirmed that no grant funds under ARP would be withheld if a school choses to make masks optional:

> **Senator Scott Martin:** Would PDE move in the direction of potentially denying any ARP funds for any school that does not implement universal masking if [the Centers for Disease Prevention and Control ("CDC")] requires that's the direction they're being pointed in?
>
> **Acting Secretary Noe Ortega**: The Department will not deny any if schools decide to go in a different direction.  What we're asking is for them to just submit what the learning modality is going to be for the fall and then make that public.

(The video of this exchange is available at https://www.senatorscottmartinpa.com/2021/06/17/ed-062221/.)

60.     Similarly, during the August 6, 2021 Public hearing on COVID-19 policies and guidance for schools, now-Secretary Ortega again confirmed that no ARP funds would be withheld if a school does not follow any CDC guidance:

> **Senator Mastriano:** [T]here seems to be some confusion as far was with the elementary and secondary school emergency relief fund.  There's an allegation from some school

districts that that's being threatened that those funds will be withheld if they don't comply with the [CDC] recommendations. Is that inaccurate or accurate?

**Secretary Ortega**: That's inaccurate.

(The video of this exchange is available at https://education.pasenategop.com/ed-080621/).

61.     The Order issued by the Secretary of Health also does not apply to Defendant (or any other School Entity in Bucks County) because 1) Bucks County has a health department, *see* 35 P.S. § 521.3(a); and 2) the Secretary has not made a finding that the BCHD's disease control program is "so inadequate that it constitutes a menace to the health of the people" within Bucks County.

62.     At present, there is no statutory law or regulations that allow Defendant to require students to wear face masks during in-person education or on school buses.

63.     Additionally, requiring masks is not a condition of any funding under ARP, as set forth in ARP, the Interim Final Rule and Secretary Ortega's testimony.

64.     Plaintiffs ask for an order declaring that Defendant lacks any legal authority to require students to wear masks during in-person education or on school buses for the 2021-2022 school year and beyond.

**WHEREFORE,** Plaintiffs respectfully ask this Honorable Court to issue an order declaring that Defendant lacks any legal authority to require students to wear face masks during in-person education or on school buses for the 2021-2022 school year and beyond.

## COUNT III – DECLARATORY JUDGMENT

### SEEKING A DECLARATION, IN THE ALTERNATIVE, THAT THE DISTRICT MUST ALLOW FOR RELIGIOUS AND PHILOSOPHICAL EXEMPTIONS TO MASK REQUIREMENTS

65. The averments of the preceding paragraphs are incorporated herein by reference.

66. This Count is brought in the alternative.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

67. Article I, Section 3 of the Pennsylvania Constitution states

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; **no human authority can, in any case whatever, control or interfere with the rights of conscience,** and no preference shall ever be given by law to any religious establishments or modes of worship.

PA. CONST. art I, § 3 (emphasis added).

68.    To the extent that the Order applies, Section 4(A)(5)(c) states that School Entities should not "[v]iolate other laws, including state and federal anti-discrimination laws."

69. Schools "must operate within ... constitutional restraints." 22 Pa. Code § 12.3(a).

70. The Public School Code provides that

> [Article XIV. School Health Services] shall not be construed to compel any person to submit to any medical ... examination or treatment under the authority of this act when the person or the parent or guardian of the person, if a minor, objects to the examination or treatment on religious grounds or to permit any discrimination against any person on account of such objections...

24 P.S. § 14-1419.

71.    The Public School Code does not define the terms "medical examination" or "medical treatment."

72.    An actual controversy exists with respect to whether the use of face masks constitutes a form of a medical treatment to which the religious and/or philosophical objections guaranteed under the Pennsylvania Constitution and the Public School Code apply.

73.    According to the CDC, face masks are intended "to prevent transmission of SARS-CoV-2." *See* https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

74.    Per the Food and Drug Administration, face masks have been authorized for emergency use only "to prevent the spread of the virus called severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) during the Coronavirus Disease 2019 (COVID-19) pandemic…" *See* https://www.fda.gov/media/137121/download.

75.    As face masks are being recommended to stop the spread of SARS-CoV-2 in order to prevent COVID-19 from occurring in humans, face masks are a form of prophylactic medical treatment.    *See    generally*    https://www.rxlist.com/prophylactic/definition.htm    (defining "prophylactic" as "A preventive measure. The word comes from the Greek for 'an advance guard,' an apt term for a measure taken to fend off a disease or another unwanted consequence.   A prophylactic is a medication or a treatment designed and used to prevent a disease from occurring.").

76.    The Public School Code must be interpreted to allow for religious objections to face masks as a form of medical treatment under 24 P.S. § 14-1419.

77.    The Public School Code must be interpreted to allow for philosophical objections to face masks as a form of medical treatment under 24 P.S. § 14-1419. *See* PA. CONST. art I, § 3; *see also* 28 Pa.Code § 23.84(b) (stating that children are not required to receive certain medical treatment "if the parent, guardian or emancipated child objects in writing to the immunization on religious grounds or **on the basis of a strong moral or ethical conviction similar to a religious belief**") (emphasis added).

78.    Plaintiffs have religious and/or strong moral ethical convictions similar to a religious belief against the requirements to force children to wear face masks during in-person education or while riding school buses.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

79.    Plaintiffs ask for an order declaring that Defendant must allow for religious objections from masking requirements.

80.    Plaintiffs asks for an order declaring that Defendant must allow for philosophical objections to masking requirements.

**WHEREFORE,** Plaintiffs respectfully ask this Honorable Court to issue an order declaring that Defendant must allow for religious and/or philosophical objections to masking requirements during in-person education or on school buses for the 2021-2022 school year and beyond.

**COUNT IV**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

81.    The averments of the preceding paragraphs are incorporated herein by reference.

82.    Pursuant to Pa.R.Civ.P. 1531, Plaintiffs seek to preliminarily and permanently enjoin Defendant from enforcing any practice, policy or portion of a health and safety plan requiring students to wear masks during in-person education or on school buses.

83.    In the alternative, to the extent that this Court finds that Defendant has the power to require students to wear face masks, Plaintiffs, under Pa.R.Civ.P. 1531, seek to preliminarily and permanently enjoin Defendant from not allowing religious and/or philosophical objections to mask requirements.

84.    In order to obtain a preliminary injunction, Plaintiffs must establish that 1) the injunction is necessary to prevent immediate and irreparable harm which cannot be compensated adequately by damages; 2) greater injury would result from refusing the injunction than from granting it; 3) the injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) the right to relief is clear in that she is likely to prevail

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

on the merits; 5) the injunction is reasonably suited to the abate the offending activity; and 6) the injunction will not adversely affect the public interest.

85.     Here, an injunction is necessary to prevent the immediate and irreparable harm of "[i]nterfering with the breathing of" children by forcing children to wear masks.  *See* 23 Pa.C.S. § 6301(b.1)(8)(v) (defining "child abuse").  Additionally, an injunction is necessary to ensure that students can effectively communicate with teachers, staff members and peers without obstruction. *See also Issa v. School District of Lancaster*, 847 F.3d 121, 142-43 (3d.Cir. 2017) (recognizing that "even a 'few months' in an unsound [educational] program can make a 'world of difference in harm' to a child's educational development" and citing *Nieves Marquez v. Puerto Rico*, 353 F.3d 108, 121–22 (1st Cir. 2003)); *see* Exhibit B ("The effects of ongoing COVID-19 mitigation efforts have led to significant learning loss, mental health issues, and social adjustment difficulties in many students").

86.     Additionally, the enforcement of any practice, policy or procedure of a health and safety plan that requires face masks constitutes a statutory violation of the Child Protective Services Law (by sanctioning the interference with the breathing of children) that necessitates injunctive relief. *See Wolk v. School District of Lower Merion*, 228 A.3d 595, 610 ("For purposes of injunctive relief, statutory violations constitute irreparable harm *per se*").

87.     The enforcement of any practice, policy or procedure that requires students to wear masks without the ability to receive exemptions based on religious beliefs and strong moral or ethical beliefs similar to a religious belief deprives them of their constitutional rights guaranteed under Article 1, Section 3 of the Pennsylvania Constitution.

88.     Greater injury would result from refusing, rather than granting, an injunction in that, if an injunction is not entered, children will be excluded from the classroom and forced to

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

wear masks that limit their ability to receive educational instruction or effectively communicate with teachers, staff and their peers. Whereas, if an injunction is granted, students will be permitted to reap the benefits of unfettered communication, and the CPSL would not be violated.

89.     An injunction would restore the parties to the *status quo* by restoring the ability of children to receive in-person instruction and travel on school buses without the need to wear masks that existed prior to the COVID-19 pandemic.

90.     "To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 506 (Pa. 2014). Here, there is no legal authority permitting the District to require students to wear marks in the absence of the Universal Masking Order. As Defendants are requiring face masks and isolation and quarantining without any legal authority, Plaintiffs have a clear right to relief.

91.     An injunction is reasonably suited to abate the offending activity (requiring children to wear masks and forcing children from the classroom) in that an injunction will require Defendants to permit students to once again receive in-person instruction and travel to and from school without the need to wear masks.

92.     Granting the injunction will serve the public interest by ensuring that children are able to receive in-person education and ride on school buses without face masks interfering with their breathing.

93.     As Pa. R.C.P. 1531(b)(1) requires the posting of bond when granting an injunction, Plaintiffs respectfully ask this Court to permit the posting of a nominal bond or legal tender in the amount of $1.00. *See Pleasant Hills Const. Co., Inc. v. Public Auditorium Authority of Pittsburgh*,

782 A.2d 68, 81 (Pa. Commw. 2001) (affirming trial court ruling requiring nominal bond of $1.00),

*order rev'd on other grounds* 784 A.2d 1277 (Pa. 2001); *Christo v. Tuscany, Inc.*, 533 A.2d 461,

463 (Pa. Super. 1987) (noting a trial court order requiring nominal bond of $1.00).

**WHEREFORE**, Plaintiffs respectfully ask this Honorable Court to issue an order

preliminarily and permanently enjoining Defendants from implementing and enforcing any policy,

practice or health and safety plan that requires students to wear face masks during in-person

instruction or while on school buses.

LAW OFFICE OF TUCKER R. HULL, LLC


By: _/s/_____ J. Chadwick Schnee, Esq._
        J. Chadwick Schnee, Esquire (PA 306907)
        Law Office of Tucker R. Hull, LLC
        108 W. Main Street
        P.O. Box 330
        Annville, PA  17003
        (717) 685-7947
        Fax: (717) 685-7942
        chadwick@tucker-hull-law.com
        *Counsel for Plaintiffs*

Date: September 9, 2021

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## <u>VERIFICATION</u>

I, Jamie Walker, Plaintiff verify that the statements made in this pleading are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date:   9/9/2021                                 <u>     /s/ Jamie Walker     </u>
                                                            Jamie Walker

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## VERIFICATION

I, Shannon Harris, Plaintiff verify that the statements made in this pleading are true and correct to the best of my information, knowledge and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date: __9/9/2021__                                              ___/s/ Shannon Harris___
                                                                Shannon Harris

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## VERIFICATION

I, Chris Doebler, hereby verify that the facts contained in the foregoing

document are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein are subject to the penalties of 18 Pa.

C.S.A. §4904 relating to unsworn falsification to authorities.

Chris Doebler

Date: September 8, 2021

## **VERIFICATION**

I, Timothy Tressler, hereby verify that the facts contained in the foregoing

document are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein are subject to the penalties of 18 Pa.

C.S.A. §4904 relating to unsworn falsification to authorities.

Timothy Tressler

Date: September 9, 2021

Copied 2021-02625-3 - JUDGE 90 Received at County of Bucks Prothonotary on 09/13/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by Mr. J. Chadwick Schnee, Esq.

# EXHIBIT A

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE-50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.



COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

### PROCLAMATION OF DISASTER EMERGENCY

#### March 6, 2020

*WHEREAS*, a novel coronavirus (now known as "COVID-19") emerged in Wuhan, China, began infecting humans in December 2019, and has since spread to 89 countries, including the United States; and

*WHEREAS*, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared COVID-19 a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

*WHEREAS*, the Commonwealth of Pennsylvania ("Commonwealth") has been working in collaboration with the CDC, HHS, and local health agencies since December 2019 to monitor and plan for the containment and subsequent mitigation of COVID-19; and

*WHEREAS*, on February 1, 2020, the Commonwealth's Department of Health activated its Department Operations Center at the Pennsylvania Emergency Management Agency's headquarters to conduct public health and medical coordination for COVID-19 throughout the Commonwealth; and

*WHEREAS*, on March 4, 2020, the Director of the Pennsylvania Emergency Management Agency ordered the activation of its Commonwealth Response Coordination Center in support of the Department of Health's Department Operations Center, to maintain situational awareness and coordinate the response to any potential COVID-19 impacts across the Commonwealth; and

*WHEREAS*, as of March 6, 2020, there are 233 confirmed and/or presumed positive cases of COVID-19 in the United States, including 2 presumed positive cases in the Commonwealth; and

*WHEREAS*, while it is anticipated that a high percentage of those affected by COVID-19 will experience mild influenza-like symptoms, COVID-19 is a disease capable of causing severe symptoms or loss of life, particularly to older populations and those individuals with pre-existing conditions; and

*WHEREAS*, it is critical to prepare for and respond to suspected or confirmed cases in the Commonwealth and to implement measures to mitigate the spread of COVID-19; and

*WHEREAS*, with 2 presumed positive cases in the Commonwealth as of March 6, 2020, the possible increased threat from COVID-19 constitutes a threat of imminent disaster to the health of the citizens of the Commonwealth; and

*WHEREAS*, this threat of imminent disaster and emergency has the potential to cause significant adverse impacts upon the population throughout the Commonwealth; and

*WHEREAS*, this threat of imminent disaster and emergency has already caused schools to close, and will likely prompt additional local measures, including affected county and municipal governments to declare local disaster emergencies because of COVID-19; and

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

*WHEREAS, this threat of imminent disaster and emergency situation throughout the Commonwealth is of such magnitude and severity as to render essential the Commonwealth's supplementation of emergency resources and mutual aid to the county and municipal governments of this Commonwealth and to require the activation of all applicable state, county, and municipal emergency response plans.*

*NOW THEREFORE, pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, et seq., I do hereby proclaim the existence of a disaster emergency throughout the Commonwealth.*

*FURTHER, I hereby authorize the Pennsylvania Emergency Management Agency Director or his designee, to assume command and control of all statewide emergency operations and authorize and direct that all Commonwealth departments and agencies utilize all available resources and personnel as is deemed necessary to cope with this emergency situation.*

*FURTHER, I hereby transfer up to $5,000,000 in unused appropriated funds to the Pennsylvania Emergency Management Agency for Emergency Management Assistance Compact expenses related to this emergency, to be decreased as conditions require, pursuant to the provisions of section 7604(a) of the Emergency Management Services Code, 35 Pa. C.S. § 7604(a). In addition, I hereby transfer up to $20,000,000 in unused appropriated funds, to be decreased as conditions require, to the Pennsylvania Emergency Management Agency pursuant to section 1508 of the Act of April 9, 1929 (P.L.343, No. 176) (the Fiscal Code), 72 P.S. § 1508. The aforementioned funds shall be used for expenses authorized and incurred related to this emergency. These funds shall be credited to a special account established by the Office of the Budget. I hereby direct that any funds transferred herein that remain unused after all costs related to this emergency have been satisfied shall be returned to the General Fund.*

*FURTHER, All Commonwealth agencies purchasing supplies or services in response to this emergency are authorized to utilize emergency procurement procedures set forth in Section 516 of the Commonwealth Procurement Code, 62 Pa. C.S. § 516. This Proclamation shall serve as the written determination of the basis for the emergency under Section 516.*

*FURTHER, I hereby suspend the provisions of any regulatory statute prescribing the procedures for conduct of Commonwealth business, or the orders, rules or regulations of any Commonwealth agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder, or delay necessary action in coping with this emergency. Commonwealth agencies may implement emergency assignments without regard to procedures required by other laws, except mandatory constitutional requirements, pertaining to performance of public work, entering into contracts, incurring of obligations, employment of temporary workers, rental of equipment, purchase of supplies and materials, and expenditures of public funds.*

*FURTHER, pursuant to the powers vested in me by the Constitution and laws of the Commonwealth pursuant to 51 Pa. C.S. § 508, I hereby authorize the Adjutant General of Pennsylvania to place on state active duty for the duration of the emergency disaster proclamation, such individuals and units of the Pennsylvania National Guard, for missions designated by the Pennsylvania Emergency Management Agency, as are needed to address the consequences of the aforementioned emergency.*

*FURTHER, I authorize the Commissioner of the Pennsylvania State Police to use all available resources and personnel in whatever manner he deems necessary during this emergency to assist the actions of the Pennsylvania Emergency Management Agency in addressing the consequences of the emergency.*

*FURTHER, I hereby authorize the Secretary of the Pennsylvania Department of Health, in her sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Health is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

Case # 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq

*FURTHER, I hereby authorize the Secretary of the Pennsylvania Department of Education, in his sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Education is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

*FURTHER, if investigations made on my behalf determine that the Commonwealth needs greater flexibility in the application of state and federal motor carrier regulations to accommodate truck drivers involved in emergency activities during this emergency, I hereby direct the Commonwealth Department of Transportation to waive or suspend any laws or federal or state regulations related to the drivers of commercial vehicles.*

*FURTHER, I hereby direct that the applicable emergency response and recovery plans of the Commonwealth, counties, municipalities and other entities be activated as necessary and that actions taken to implement those plans be coordinated through the Pennsylvania Emergency Management Agency.*

*STILL FURTHER, I hereby urge the governing bodies and executive officers of all political subdivisions affected by this emergency to act as necessary to meet the current exigencies as legally authorized under this Proclamation, namely, by the employment of temporary workers, by the rental of equipment, and by entering into such contracts and agreements as may be required to meet the emergency, all without regard to those time consuming procedures and formalities normally prescribed by law, mandatory constitutional requirement excepted.*



*GIVEN under my hand and the Seal of the Governor, at the City of Harrisburg, this sixth day of March in the year of our Lord two thousand twenty, and of the Commonwealth the two hundred and forty fourth.*

*TOM WOLF*
*Governor*

# EXHIBIT B

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

# COUNTY OF BUCKS

### DEPARTMENT OF HEALTH
**Neshaminy Manor Center, 1282 Almshouse Road, Doylestown, PA 18901 - 215-345-3318**
### FIELD OFFICES
Bucks County Government Services Center, 7321 New Falls Road, Levittown, PA 19055 – 267-580-3510
Bucks County Government Services Center, 261 California Road, Suite #2, Quakertown, PA 18951 – 215-529-7000

<table>
<tr><td><strong>County Commissioners</strong></td><td><strong>Director</strong></td></tr>
<tr><td>DIANE M. ELLIS-MARSEGLIA, LCSW, Chair</td><td>DAVID C. DAMSKER, M.D., M.P.H.</td></tr>
<tr><td>ROBERT J. HARVIE, JR., Vice-Chair</td><td></td></tr>
<tr><td>GENE DIGIROLAMO</td><td></td></tr>
</table>

8/15/21

### 2021-2022 SCHOOL REOPENING GUIDANCE AND FREQUENTLY ASKED QUESTIONS

## Introduction

As the new school year approaches, the Bucks County Health Department (BCHD) wishes to provide school entities with guidance to assist in their back-to-school planning. The COVID-19 pandemic continues to be a fluid situation with ebbs, flows, and variants. Accordingly, the BCHD has and will continue to adjust its guidance and recommendations as necessary. In Bucks County, cases have only increased modestly, and are well below their peak in December, 2020. In fact, as of the date this memo was issued, Bucks County as a whole averages 9 cases per day of school-aged children.

While some may be looking for County-wide mandates, neither the Bucks County Commissioners nor the BCHD can dictate to independently-elected school boards or school district superintendents how to manage their schools or students. Further, the BCHD cannot provide legal advice to school districts. Any BCHD school guidance is strictly advisory, though all state and federal guidelines acknowledge and recommend the importance of working in collaboration with local health authorities to create these plans.

Thankfully, all available evidence in Bucks County – and elsewhere – indicates that while serious illness in children with COVID-19 is possible, it is very rare. There is also clear consensus that students learn best while in school, and there is no substitute for the advantages that in-person learning provides. The effects of ongoing COVID-19 mitigation efforts have led to significant learning loss, mental health issues, and social adjustment difficulties in many students. Understandably, many parents are concerned about these effects in their children.

We understand that some parents also have safety concerns for children under 12 that are still unable to be vaccinated. Parents are empowered to make choices based on those concerns, including masking their children regardless of school district masking policies.

Knowing these facts about COVID-19, school boards, and their administrations have the unenviable task of making decisions about what plans to implement and what guidance to follow. During the 2020-21 school year, school districts and daycares followed guidance from multiple sources, including the BCHD, and under very difficult circumstances educated our children while keeping them safe.

In an effort to provide some clarity for the upcoming school year, the BCHD has put together the following FAQ. These responses are based on science, years of public health policy, 18 months of accumulated local experience with the pandemic, and common sense. Both the Commissioners and the BCHD are aware that a full return to school is a critically important issue for the mental health and educational development of our children. Ultimately, the collective objective for all stakeholders is to keep our children and communities safe. The BCHD continues to be available to review health and safety plans that public-school districts, private schools, or daycares wish to submit, in order to help achieve that goal.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## Frequently Asked Questions

**What is the BCHD's position on CDC guidance?**
The BCHD recognizes that school districts must review guidance from federal, state and local health authorities in their decision-making process. In addition to broad CDC guidance that attempts to cover the needs of all 50 states, and guidance from the Pennsylvania Department of Health for the entire Commonwealth, schools in Bucks County have the opportunity to work collaboratively with the BCHD, as the local health authority, to incorporate specific localized guidance based on their current data. Even within Bucks County itself, factors such as population density, case counts, and vaccination rates vary, with some areas in the County more impacted by COVID-19 than others. This variability within our County further illustrates the point that a one-size-fits-all approach to disease mitigation may not always be the most prudent approach at any level. Working with the BCHD, school districts can analyze data in order make locally-informed decisions. Indeed, it was through this data-based collaboration and local perspective, which allowed for our successful return to in-person school last year. The partnership between the BCHD and school districts resulted in near daily conversations and consultations that allowed for both safe classroom environments and best practices for mitigation. This collaboration will continue throughout the upcoming school year and beyond.

**What is the BCHD's position on vaccines?**
The BCHD unequivocally recommends that everyone eligible get vaccinated. The BCHD knows that vaccines are safe, effective, and the best tool we have to mitigate COVID-19. Vaccines are proven to reduce symptoms and substantially reduce death and hospitalizations due to COVID-19. The existing data, both here in Bucks County and nationally, show the overwhelming majority of people getting seriously ill from COVID-19 are those who are unvaccinated. We recommend that school districts consider mandating vaccination for all school staff and teachers, a position supported by National Education Association (NEA) and American Federation of Teachers (AFT) nationally. Similar requirements have existed, and been successful, for decades.

**What is the BCHD's position on masks/face coverings in schools?**
For the start of the school year, we recommend that at a minimum, schools should adopt a "mask-optional" policy. Moving forward, the BCHD only recommends the use of Targeted Temporary Mitigation (TTM), wherein school districts consider making mitigation decisions in consultation with the BCHD based on their local data and for specific situations. "Targeted" means it's not a one-size-fits-all approach, and instead, is in response to individual situations and needs. Mitigation measures should be crafted in order not to affect healthy, non-exposed individuals, when possible. "Temporary" means that all mitigation be time limited to meet the needs of the specific issue at hand, rather than imposed without a defined end. To help inform their TTM decisions, the BCHD will supply each school district with data, such as current COVID-19 cases broken down by zip codes. The BCHD may recommend TTM efforts that include actions such as time-limited mask/face covering requirements for children under 12 years of age, or briefly requiring masks/face coverings for individuals in elementary school classrooms in which there are known outbreaks of multiple cases. The TTM approach mirrors similar and successful mitigation efforts supported by BCDH in schools for decades in response to various diseases. While those diseases and COVID-19 present different challenges, TTM efforts remain the gold standard from a public health perspective. Public health authorities strive to limit their response to the least restrictive action for the least period of time in order to achieve the desired outcomes for public health. Additionally, the BCHD supports enhanced TTM efforts in clinical and healthcare-like school settings, and will discuss further recommendations for those situations with school entities.

**What is the BCHD's position on masks/face coverings on school buses?**
The CDC has issued an order that requires masks/face coverings to be worn on all forms of public transportation. Each school district must work with their solicitor to interpret this order and its applicability.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

**What is the BCHD's position on sick or symptomatic students/staff in the classroom?**
The BCHD strongly recommends school districts consider that any student/staff exhibiting fever or multiple symptoms should be excluded from school until those symptoms have resolved and are fever-free for 24 hours without medication, in accordance with existing protocols and best practices. School districts may also consider utilizing TTM in other appropriate situations, such as a temporary face covering for an individual displaying symptoms while in school. The BCDH is committed to providing more detailed guidance to support school nurses on these issues throughout Bucks County schools.

**What is the BCHD's position on contact tracing and notifications?**
The BCHD continues to focus its limited resources by contact tracing in the highest-risk settings that include congregate care facilities, corrections, and nursing homes. However, we strongly recommend that school districts urge parents to report their child's confirmed case of COVID-19 to the school nurse or staff designee, and for districts to send notification to the parents of all students in that child's classroom, specifically in schools with unvaccinated children under the age of 12. The BCHD will closely monitor COVID-19 and its variants, and TTM may include a return to additional contact tracing for a period of time if it becomes necessary.

**What is the BCHD's position on isolation and quarantine?**
The BCHD strongly recommends that school districts consider requiring any symptomatic students/staff who test positive for COVID-19 be excluded from school until symptoms have resolved and they are fever-free for 24 hours. Infectiousness peaks around the time of symptom onset and declines quickly during the first several days of symptoms. Schools may then elect to require a positive individual to wear a mask/face covering upon return to school through the 7th day from symptom onset, if applicable.

Individuals who test positive but are fully asymptomatic should wait at least 3 days from the test date prior to returning to school in order to ensure they are not just pre-symptomatic (about to become symptomatic.) Based on BCDH case investigations throughout the pandemic, COVID-19 transmission within a household was very unlikely from individuals who, as the first known positive case in the household, remained asymptomatic through the course of the infection. As such, the BCHD believes individuals who have not yet developed any symptoms more than 3 days from a positive test can safely return to school. Schools may then elect to require a positive individual to wear a mask/face covering upon return to school through the 7th day from the test date.

Fully asymptomatic individuals with a known non-ongoing (i.e. not in their household) exposure to COVID-19 may continue in school normally unless any symptoms develop, in which case they should either remain home, or be evaluated by a school nurse if at school.

Fully asymptomatic individuals with an ongoing household exposure to COVID-19 should be required to wear a mask/face covering at school for a minimum of one week from the symptom onset of the household member. For fully asymptomatic individuals in households with multiple positives, the mask wearing period may be extended. If any symptoms develop during this timeframe, the individual should be immediately excluded.

**What is the BCHD's position on social distancing and classroom capacity limits?**
The BCHD supports any school district efforts to socially distance when feasible, while still prioritizing the importance of in-person instruction. There is no need to limit classroom capacity at this time.

**What is the BCHD's position on testing?**
The BCHD is committed to providing assistance, resources, and funding to support rapid testing protocols for symptomatic individuals for stakeholders to keep schools open.

**Where can school districts, parents, and stake holders access pertinent data?**
Please visit buckscounty.gov and click on the COVID-19 button. For any data not found on the site, the BCHD will work with school districts to provide additional information they can use to establish TTM policies. The BCHD encourage school districts to share data with the community as appropriate to empower parents to make informed choices for their children.

# EXHIBIT C

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.



**pennsylvania**
DEPARTMENT OF HEALTH

# Order of the Acting Secretary of the Pennsylvania Department of Health Directing Face Coverings in School Entities

The **2019 novel coronavirus (COVID-19)** is a contagious disease that continues spreading rapidly from person to person in the world, the United States, and this Commonwealth. Despite periods of time when the virus seemed to wane, it, like all viruses, has continued to mutate, and spread. As of the date of this Order, there have been 1,300,368 cases and 28,235 deaths in this Commonwealth caused by the still present and ongoing pandemic. At this time, the Centers for Disease Control and Prevention (CDC) estimates that the Delta variant is the predominant strain in the Commonwealth. COVID-19 can be transmitted from any person who is infected, even if they have no symptoms and, with the Delta variant, even if they have been vaccinated.[1] Symptoms of COVID-19 may include fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, or diarrhea. Older adults and people who have serious chronic medical conditions were considered to be at higher risk for serious illness. Now, because of the rise of the Delta variant, increasing disease and hospitalizations, and the inability to obtain vaccines for a large part of that vulnerable group, children are more and more at risk.

There are several reasons for the increasing risk to children from COVID-19. The risk overall to the unvaccinated population is rising. Given the rise in hospitalizations and deaths, and despite COVID-19 vaccines being available, the Delta variant of the SARS-CoV-2 virus is causing the rate of cases of COVID-19 to increase.[2] The Delta variant is more infectious, and it is leading to increased transmissibility.[3] Additionally, data is suggesting that the Delta variant may cause more severe illness than previous strains of SARS-CoV-2.[4] Vaccination remains the most effective protection against all strains of SARS-CoV-2; however, not all of our population is able to get vaccinated. As of yet, no vaccine has been approved for children under the age of 12. As of August 26, 2021, the total number of cumulative cases reported in children in the Commonwealth was 23,974 in the 0-4 years of age cohort, 56,039 in the 5-12 years of age cohort, and 88,205 in the 12-18 years of age cohort.

---

[1]     Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021,
*Weekly* / August 6, 2021 / 70(31);1059-1062 (last visited, August 26, 2021); Key Things to Know About COVID-19 Vaccines, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html   (Updated August 19, 2021) (last visited August 26, 2021).

[2]     Delta Variant: What we Know about the Science, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Aug. 9, 2021); Rachel Herlihy, *et al.*, "Rapid Increase in Circulation of SARS-CoV-2 B.1.617.2 (Delta) Variant," Aug. 6, 2021, CDC,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7032e2.htm?s_cid=mm7032e2_w (last visited Aug. 9, 2021); Megan Scudellari, "How the Coronavirus Infects Cells – and Why Delta is so Dangerous," Nature, https://www.nature.com/articles/d41586-021-02039-y (last visited Aug. 11, 2021).
[3]     *Id.*
[4]     *Id.*



**pennsylvania**
DEPARTMENT OF HEALTH

In addition to the concern that COVID-19 spreads quickly and dangerously among children, there are concerns that school closures create health issues for children, too.  Maintaining in-person instruction at schools is imperative, since it has also been shown that in-person instruction and socialization are necessary for the health and well-being of our children.[5][6][7]  In view of this serious concern for our nation's children, the CDC has issued a strong recommendation for masking of all persons, teachers, students and staff, within the nation's schools, regardless of vaccination status, to create a multi-layered approach for fighting COVID and to keep our schools open for in-person education.  In addition, the American Academy of Pediatrics (AAP) has also strongly recommended masking in schools.  Finally, recent studies have shown that mask-wearing in schools has contributed to lower levels of COVID-19 transmission among students and staff and allowed for the continued in-person attendance.[8]  Requiring face coverings in schools, therefore, balances the concerns for the mental health of our children with the need to protect them against a disease that is growing more virulent as we struggle to protect the most vulnerable members of our population.  In accordance with the recommendations of the CDC and the AAP and based upon the rising case numbers and hospitalizations in general in the Commonwealth, including the number of cases in our children, as well as the need to protect and maintain in-person education for the health and well-being of those children, I am issuing this Order to protect the ability of our schools to continue to educate our children, and of our children to receive in-person instruction in the safest environment possible.

---

[5]      Engzell P., Frey A., Verhagen M.D, "Learning loss due to school closures during the COVID-19 pandemic," *Proc Natl Acad Sci* 2021;118(17),  https://www.pnas.org/content/118/17/e2022376118
(last visited August 26, 2021).

[6]      Barnett W.S., Jung, K., "Seven Impacts of the Pandemic on Young Children and their Parents: Initial Findings from NIEER's December 2020 Preschool Learning Activities Survey. 2021," New Brunswick, NJ: National Institute for Early Education Research.

[7]      Verlenden J.V., Pampati S., Rasberry C.N., *et al.*, "Association of Children's Mode of School Instruction with Child and Parent Experiences and Well-Being During the COVID-19 Pandemic — COVID Experiences Survey, United States, October 8–November 13, 2020," *MMWR Morb Mortal Wkly Rep* 2021;70:369–376, https://www.cdc.gov/mmwr/volumes/70/wr/mm7011a1.htm (last visited August 26, 2021).

[8]      Zimmerman KO, Akinboyo IC, Brookhart MA, *et al.*, "Incidence and Secondary Transmission of SARS-CoV-2 Infections in Schools," *Pediatrics* 2021;147(4), https://pubmed.ncbi.nlm.nih.gov/33419869/ (last visited August 26, 2021); Hershow R.B., Wu K., Lewis NM, *et al.*, "Low SARS-CoV-2 Transmission in Elementary Schools — Salt Lake County, Utah, December 3, 2020-January 31, 2021, "*MMWR Morb Mortal Wkly Rep* 2021;70(12):442-448, https://www.cdc.gov/mmwr/volumes/70/wr/mm7012a3.htm (last visited August 26, 2021); Falk A., Benda A., Falk P., *et al.*, "COVID-19 Cases and Transmission in 17 K-12 Schools – Wood County, Wisconsin, August 31-November 29, 2020," *MMWR Morb Mortal Wkly Rep* 2021;70(4):136-140, https://www.cdc.gov/mmwr/volumes/70/wr/mm7004e3.htm (last visited August 26, 2021);  Dawson P., Worrell M.C., Malone S., *et al.*, "Pilot Investigation of SARS-CoV-2 Secondary Transmission in Kindergarten Through Grade 12 Schools Implementing Mitigation Strategies – St. Louis County and City of Springfield, Missouri, December 2020," *MMWR Morb Mortal Wkly Rep* 2021;70(12):449-455, https://www.cdc.gov/mmwr/volumes/70/wr/mm7012e4.htm (last visited August 26, 2021).

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.



**pennsylvania**
DEPARTMENT OF HEALTH

COVID-19 is a threat to the public's health, for which the Secretary of Health may order general control measures. This authority is granted to the Secretary of Health pursuant to Pennsylvania law. *See* section 5 of the Disease Prevention and Control Law, 35 P.S. § 521.5; section 2102(a) of the Administrative Code of 1929, 71 P.S. § 532(a); and the Department of Health's regulation at 28 Pa. Code § 27.60 (relating to disease control measures). Particularly, the Department of Health (Department) has the authority to take any disease control measure appropriate to protect the public from the spread of infectious disease. *See* 35 P.S. § 521.5; 71 P.S. §§ 532(a), and 1403(a); 28 Pa. Code § 27.60. With the opening of the 2021 school year at hand, and case counts and hospitalizations continuing to rise, there is a need for additional action to protect our Commonwealth's children.

Accordingly, on this day, August 31, 2021, in order to prevent and control the spread of disease, I hereby order:

Section 1.      Definitions

For purposes of this Order, the listed terms have the following meanings:

"Alternative to a face covering" may include a plastic face shield that covers the nose and mouth, extends below the chin and to the ears, and leaves no exposed gap between the forehead and the shield's headpiece. The Centers for Disease Control and Prevention (CDC) has advised there is currently not enough evidence to determine how much protection a face shield provides to individuals around the person wearing the face shield because of gaps where respiratory droplets may escape. The CDC does state, however, that face shields may still be an option in situations where wearing a cloth face covering is not otherwise feasible.

"Department" means the Department of Health of the Commonwealth.

"Face covering" means covering of the nose and mouth with material that is secured to the head with ties, straps, or loops over the ears or is wrapped around the lower face. A "face covering" can be made of a variety of synthetic or natural fabrics, including cotton, silk, or linen. A "face covering" may be factory-made, sewn by hand, or be improvised from household items, including, but not limited to, scarfs, bandanas, t-shirts, sweatshirts, or towels. While procedural and surgical masks intended for health care providers and first responders, such as N95 respirators, meet those requirements, these specialized masks should be reserved for appropriate occupational and health care personnel.

"School Entity" means any of the following:

(1)      A public PreK-12 school.
(2)      A brick and mortar or cyber charter school.
(3)      A private or parochial school.
(4)      A career and technical center (CTC).

3

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.



**pennsylvania**
DEPARTMENT OF HEALTH

      (5)    An intermediate unit (IU).
      (6)    A PA Pre-K Counts program, Head Start Program, Preschool Early Intervention program, or Family Center.
      (7)    A private academic nursery school and locally-funded prekindergarten activities.
      (8)    A child care provider licensed by the Department of Human Services of the Commonwealth.

Section 2:    General Masking Requirement

Each teacher, child/student, staff, or visitor working, attending, or visiting a School Entity shall wear a face covering indoors, regardless of vaccination status, except as set forth in Section 3.

Section 3:    Exceptions to Covering Requirement

The following are exceptions to the face covering requirements in Section 2. All alternatives to a face covering, including the use of a face shield, should be exhausted before an individual is excepted from this Order.

A.    If wearing a face covering while working would create an unsafe condition in which to operate equipment or execute a task as determined by local, state, or federal regulators or workplace safety guidelines.

B.    If wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.

C.    When necessary to confirm the individual's identity.

D.    When working alone and isolated from interaction with other people with little or no expectation of in-person interaction.

E.    If an individual is communicating or seeking to communicate with someone who is hearing-impaired or has another disability, where the ability to see the mouth is essential for communication.

F.    When the individual is under two (2) years of age.

G.    When an individual is:

      (1)    Engaged in an activity that cannot be performed while wearing a mask, such as eating and drinking, or playing an instrument that would be obstructed by the face covering; or

4

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.



**pennsylvania**
DEPARTMENT OF HEALTH

      (2)    Participating in high intensity aerobic or anerobic activities, including during a physical education class in a well-ventilated location and able to maintain a physical distance of six feet from all other individuals.

    H.    When a child/student is participating in a sports practice activity or event, whether indoors or outdoors.

**Section 4.**    School Entity Obligations

    A.    A School Entity must:

        1.    Require and enforce the requirement that all teachers, children/students, staff, and visitors (subject to the exceptions in Section 3) wear a face covering indoors, regardless of whether this Order is reflected in a school entity's Health and Safety Plan.

        3.    Post prominent signs in conspicuous locations for teachers, children/students, staff, and visitors stating that face coverings are required by the Order of the Secretary of Health.

        4.    Provide reasonable accommodations for individuals who state they have a medical condition, mental health condition, or disability that makes it unreasonable for the person to maintain a face covering.

        5.    A School Entity should not:

            a.    Enforce face covering requirements when there is an exception under Section 3 or if it is unsafe to do so.

            b.    Restrain, use force, or physically remove, teachers, children/students, staff, or visitors who refuse to comply with this Order when it would not otherwise be legal to do so.

            c.    Violate other laws, including state and federal anti-discrimination laws.


**pennsylvania**
DEPARTMENT OF HEALTH

Section 5.     Federal Requirements Relating to Transportation

This Order shall not impact the obligation of any School Entity to comply with requirements issued by the CDC, including requirements for masking on public transportation conveyances, such as school district transportation.

Section 6.     Effective Date and Duration

This Order shall take effect at 12:01 a.m. on September 7, 2021, and shall remain in effect until otherwise terminated.

*Alison V. Beam*

Alison V. Beam
Acting Secretary of Health

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

# EXHIBIT D

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

**CENTERS FOR DISEASE CONTROL AND PREVENTION
DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**ORDER UNDER SECTION 361
OF THE PUBLIC HEALTH SERVICE ACT (42 U.S.C. 264)
AND 42 CODE OF FEDERAL REGULATIONS 70.2, 71.31(b), 71.32(b)**

**REQUIREMENT FOR PERSONS TO WEAR MASKS
WHILE ON CONVEYANCES AND AT TRANSPORTATION HUBS**

SUMMARY:

Notice and Order; and subject to the limitations under "Applicability," pursuant to 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b):

(1) Persons[1] must wear[2] masks over the mouth and nose when traveling on conveyances into and within the United States. Persons must also wear masks at transportation hubs as defined in this Order.

(2) A conveyance operator transporting persons into and within the United States[3] must require all persons onboard to wear masks for the duration of travel.

(3) A conveyance operators operating a conveyance arriving at or departing from a U.S. port of entry must require all persons on board to wear masks for the duration of travel as a condition of controlled free pratique.[4]

(4) Conveyance operators must use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel. Best efforts include:

- boarding only those persons who wear masks;
- instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law;
- monitoring persons onboard the conveyance for anyone who is not wearing a mask and seeking compliance from such persons;
- at the earliest opportunity, disembarking any person who refuses to comply; and
- providing persons with prominent and adequate notice to facilitate awareness and compliance of the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email;

---

[1] As used in this Order, "persons" includes travelers (*i.e.*, passengers and crew), conveyance operators, and any workers or service providers in the transportation hub.

[2] To "wear a mask" means to wear a mask over the nose and mouth.

[3] This includes international, interstate, or intrastate waterways, subject to the jurisdiction of the United States.

[4] As a condition of this controlled free pratique to commence or continue operations in the United States, conveyance operators must additionally require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons on the conveyance (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. This precaution must be followed regardless of scheduled itinerary.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

(5) Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask. Best efforts include:

- allowing entry only to those persons who wear masks;
- instructing persons that Federal law requires wearing a mask in the transportation hub and failure to comply constitutes a violation of Federal law;
- monitoring persons on the premises of the transportation hub for anyone who is not wearing a mask and seeking compliance from such persons;
- at the earliest opportunity, removing any person who refuses to comply from the premises of the transportation hub; and
- providing persons with prominent and adequate notice to facilitate awareness and compliance with the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

DEFINITIONS:

*Controlled free pratique* shall have the same definition as under 42 CFR 71.1, meaning "permission for a carrier to enter a U.S. port, disembark, and begin operation under certain stipulated conditions."

*Conveyance* shall have the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle,[5] vessel . . . or other means of transport, including military." Included in the definition of "conveyance" is the term "carrier" which under 42 CFR 71.1 has the same definition as conveyance under 42 CFR 70.1.

*Conveyance operator* means an individual operating a conveyance and an individual or organization causing or authorizing the operation of a conveyance.

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[6]

*Interstate traffic* shall have the same definition as under 42 CFR 70.1, meaning

---

[5] This includes rideshares meaning arrangements where passengers travel in a privately owned road vehicle driven by its owner in connection with a fee or service.

[6] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this Order. CDC guidance for attributes of acceptable masks in the context of this Order is available at:
https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html

"(1):

(i) The movement of any conveyance or the transportation of persons or property, including any portion of such movement or transportation that is entirely within a state or possession–

(ii) From a point of origin in any state or possession to a point of destination in any other state or possession; or

(iii) Between a point of origin and a point of destination in the same state or possession but through any other state, possession, or contiguous foreign country.

(2) Interstate traffic does not include the following:

(i) The movement of any conveyance which is solely for the purpose of unloading persons or property transported from a foreign country or loading persons or property for transportation to a foreign country.

(ii) The movement of any conveyance which is solely for the purpose of effecting its repair, reconstruction, rehabilitation, or storage."

*Intrastate traffic* means the movement of any conveyance or the transportation or movement of persons occurring solely within the boundaries of a state or territory, or on tribal land.

*Possession* shall have the same definition as under 42 CFR 70.1 and 71.1, meaning a "U.S. territory."

*State* shall have the same definition as under 42 CFR 70.1, meaning "any of the 50 states, plus the District of Columbia."

*Territory* shall have the same definition as "U.S. territory" under 42 CFR 70.1 and 71.1, meaning "any territory (also known as possessions) of the United States, including American Samoa, Guam, the [Commonwealth of the] Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands."

*Transportation hub* means any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

*Transportation hub operator* means an individual operating a transportation hub and an individual or organization causing or authorizing the operation of a transportation hub.

*U.S. port* shall have the same definition as under 42 CFR 71.1, meaning any "seaport, airport, or border crossing point under the control of the United States."


## STATEMENT OF INTENT:

3

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

This Order shall be interpreted and implemented in a manner as to achieve the following objectives:

- Preservation of human life;
- Maintaining a safe and secure operating transportation system;
- Mitigating the further introduction, transmission, and spread of COVID-19 into the United States and from one state or territory into any other state or territory; and
- Supporting response efforts to COVID-19 at the Federal, state, local, territorial, and tribal levels.

APPLICABILITY:

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe that (1) requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Such requirements must provide the same level of public health protection as — or greater protection than —the requirements listed herein.

In addition, the requirement to wear a mask shall not apply under the following circumstances:

- While eating, drinking, or taking medication, for brief periods;
- While communicating with a person who is hearing impaired when the ability to see the mouth is essential for communication;
- If, on an aircraft, wearing of oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation;
- If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance;[7] or
- When necessary to temporarily remove the mask to verify one's identity such as during Transportation Security Administration screening or when asked to do so by the ticket or gate agent or any law enforcement official.

This Order exempts the following categories of persons:[8]

---

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

- A child under the age of 2 years;
- A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[9]
- A person for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

This Order exempts the following categories of conveyances, including persons on board such conveyances:

- Private conveyances operated solely for personal, non-commercial use;
- Commercial motor vehicles or trucks as these terms are defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle or truck;
- Conveyances operated or chartered by the U.S. military services provided that such conveyance operators observe Department of Defense precautions to prevent the transmission of COVID-19 that are equivalent to the precautions in this Order.

This Order applies to persons on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities, as well as the operators themselves. U.S. state, local, territorial, or tribal government authorities directly operating conveyances and transportation hubs may be subject to additional federal authorities or actions, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities.

To the extent permitted by law, and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID-19 Safety in Domestic and International Travel),[10] Federal agencies are required to implement additional measures enforcing the provisions of this Order.

BACKGROUND:

There is currently a pandemic of respiratory disease (coronavirus disease 2019 or "COVID-19") caused by a novel coronavirus (SARS-COV-2). As of January 27, 2021, there have been 99,638,507 confirmed cases of COVID-19 globally, resulting in more than 2,141,000 deaths. As of January 27, 2021, there have been over 25,000,000 cases identified in the United States and over 415,000 deaths due to the disease. New SARS-CoV-2 variants have emerged in recent weeks, including at least one with evidence of increased transmissibility.[11]

The virus that causes COVID-19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets

---

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability. CDC will issue additional guidance regarding persons who cannot wear a mask under this exemption. https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html

[10] https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-promoting-covid-19-safety-in-domestic-and-international-travel/

[11] https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/scientific-brief-emerging-variants.html

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Infected people without symptoms (asymptomatic) and those in whom symptoms have not yet developed (pre-symptomatic) can also spread the virus. In general, the more closely an infected person interacts with others and the longer those interactions, the higher the risk of COVID-19 spread. COVID-19 may be transmitted by touching surfaces or objects that have the virus on them and then touching one's own or another person's eyes, nose, or mouth.

Masks help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others.[12] Masks are primarily intended to reduce the emission of virus-laden droplets, i.e., they act as source control by blocking exhaled virus.[13] This is especially relevant for asymptomatic or pre-symptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions.[14,15] Masks also provide personal protection to the wearer by reducing inhalation of these droplets, i.e., they reduce wearers' exposure through filtration.[16] The community benefit of wearing masks for SARS-CoV-2 control is due to the combination of these effects; individual prevention benefit increases with increasing numbers of people using masks consistently and correctly.

Appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19.  Seven studies have confirmed the benefit of universal masking in community level analyses: in a unified hospital system,[17] a  German city,[18] a U.S. State,[19] a panel of 15 U.S. States and Washington, D.C.,[20,21] as

---

[12] https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html

[13] Leung NHL, Chu DKW, Shiu EYC, et al. Respiratory virus shedding in exhaled breath and efficacy of face masks. *Nature Medicine.* 2020;26(5):676-680.https://dx.doi.org/10.1038/s41591-020-0843-2

[14] Moghadas SM, Fitzpatrick MC, Sah P, et al. The implications of silent transmission for the control of COVID-19 outbreaks. *Proc Natl Acad Sci U S A.* 2020;117(30):17513-17515.10.1073/pnas.2008373117. https://www.ncbi.nlm.nih.gov/pubmed/32632012

[15] Johansson MA, Quandelacy TM, Kada S, et al. SARS-CoV-2 Transmission From People Without COVID-19 Symptoms. Johansson MA, et al. JAMA Netw Open. 2021 Jan 4;4(1):e2035057. doi: 10.1001/jamanetworkopen.2020.35057.

[16] Ueki H, Furusawa Y, Iwatsuki-Horimoto K, et al. Effectiveness of Face Masks in Preventing Airborne Transmission of SARS-CoV-2. *mSphere.* 2020;5(5).10.1128/mSphere.00637-20. https://www.ncbi.nlm.nih.gov/pubmed/33087517

[17] Wang X, Ferro EG, Zhou G, Hashimoto D, Bhatt DL. Association Between Universal Masking in a Health Care System and SARS-CoV-2 Positivity Among Health Care Workers. *JAMA.* 2020.10.1001/jama.2020.12897. https://www.ncbi.nlm.nih.gov/pubmed/32663246

[18] Mitze T., Kosfeld R., Rode J., Wälde K. *Face Masks Considerably Reduce COVID-19 Cases in Germany: A Synthetic Control Method Approach.* IZA    Institute of Labor Economics (Germany);2020.ISSN: 2365-9793, DP No. 13319. http://ftp.iza.org/dp13319.pdf

[19] Gallaway MS, Rigler J, Robinson S, et al. Trends in COVID-19 Incidence After Implementation of Mitigation Measures    Arizona, January 22-August 7, 2020. *MMWR Morb Mortal Wkly Rep.* 2020;69(40):1460-1463.10.15585/mmwr.mm6940e3. https://www.ncbi.nlm.nih.gov/pubmed/33031366

[20] Lyu W, Wehby GL. Community Use Of Face Masks And COVID-19: Evidence From A Natural Experiment Of State Mandates In The US. *Health Aff (Millwood).* 2020;39(8):1419-1425.10.1377/hlthaff.2020.00818. https://www.ncbi.nlm.nih.gov/pubmed/32543923

[21] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research* https://www.goldmansachs.com/insights/pages/face-masks-and-gdp.html. Accessed January 20, 2021.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

well as both Canada[22] and the United States[23] nationally. Each analysis demonstrated that, following directives from organizational and political leadership for universal masking, new infections fell significantly. Two of these studies[24,25] and an additional analysis of data from 200 countries that included localities within the United States[26] also demonstrated reductions in mortality. An economic analysis using U.S. data found that, given these effects, increasing universal masking by 15% could prevent the need for lockdowns and reduce associated losses of up to $1 trillion or about 5% of gross domestic product.[27]

Wearing a mask especially helps protect those at increased risk of severe illness from COVID-19[28] and workers who frequently come into close contact with other people (e.g., at transportation hubs). Masks are most likely to reduce the spread of COVID-19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID-19 transmission.

Traveling on multi-person conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces. Air travel often requires spending time in security lines and crowded airport terminals. Social distancing may be difficult if not impossible on flights. People may not be able to distance themselves by the recommended 6 feet from individuals seated nearby or those standing in or passing through the aircraft's aisles. Travel by bus, train, vessel, and other conveyances used for international, interstate, or intrastate transportation pose similar challenges.

Intrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus, particularly on public conveyances and in travel hubs, where passengers who may themselves be traveling only within their state or territory commonly interact with others traveling between states or territories or internationally. Some states, territories, Tribes,

[22] Karaivanov A., Lu S.E., Shigeoka H., Chen C., Pamplona S. *Face Masks, Public Policies and Slowing the Spread of Covid-19: Evidence from Canada* National Bureau of Economic Research 2020.Working Paper 27891. http://www.nber.org/papers/w27891

[23] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid-19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23-62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[24] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research* https://www.gold-mansachs.com/insights/pages/face-masks-and-gdp.html. Accessed January 20, 2021.

[25] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid-19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23-62. doi: 10.1016/j.jeconom.2020.09.003. Epub 2020 Oct 17.

[26] Leffler CT, Ing EB, Lykins JD, Hogan MC, McKeown CA, Grzybowski A. Association of country-wide coronavirus mortality with demographics, testing, lockdowns, and public wearing of masks. Am J Trop Med Hyg. 2020 Dec;103(6):2400-2411. doi: 10.4269/ajtmh.20-1015. Epub 2020 Oct 26.

[27] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research* https://www.gold-mansachs.com/insights/pages/face-masks-and-gdp.html. Accessed January 20, 2021.

[28] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

and local public health authorities have imposed mask-wearing requirements within their juris-dictional boundaries to protect public health.[29] Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID-19 from such state or territory to any other state or territory. That determination is based on, *inter alia*, the rapid and continuing transmission of the virus across all states and territories and across most of the world. Furthermore, given how inter-connected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wear-ing masks.

Therefore, I have determined that the mask-wearing requirements in this Order are reasonably necessary to prevent the further introduction, transmission, or spread of COVID-19 into the United States and among the states and territories. Individuals traveling into or departing from the United States, traveling interstate, or traveling entirely intrastate, conveyance operators that transport such individuals, and transportation hub operators that facilitate such transporta-tion, must comply with the mask-wearing requirements set forth in this Order.

America's transportation systems are essential. Not only are they essential for public health, they are also essential for America's economy and other bedrocks of American life. Those transportation systems carry life-saving medical supplies and medical providers into and across the nation to our hospitals, nursing homes, and physicians' offices. Trains, planes, ships, and automobiles bring food and other essentials to our communities and to our homes. Buses bring America's children and teachers to school. Buses, trains, and subways, bring America's workforce to their jobs.

Requiring masks on our transportation systems will protect Americans and provide confidence that we can once again travel safely even during this pandemic. Therefore, requiring masks will help us control this pandemic and aid in re-opening America's economy.

The United States and countries around the world are currently embarking on efforts to vac-cinate their populations, starting with healthcare personnel and other essential workers at in-creased risk of exposure to SARS-CoV-2 and people at increased risk for severe illness from the virus. While vaccines are highly effective at preventing severe or symptomatic COVID-19, at this time there is limited information on how much the available COVID-19 vaccines may reduce transmission in the general population and how long protection lasts.[30] Therefore, this mask requirement, as well as CDC recommendations to prevent spread of COVID-19,[31] additionally apply to vaccinated persons. Similarly, CDC recommends that people who have

---

[29] Based on internet sources, 37 states plus D.C. and Puerto Rico mandate the wearing of masks in public. Among the jurisdictions that have imposed mask mandates, variations in requirements exist. For example, exemptions for children range in cutoff age from 2 to 12, but masks are generally required in indoor public spaces such as restau-rants and stores, on public transit and ride-hailing services, and outdoors when unable to maintain 6 feet of distance from others. *See* https://www.aarp.org/health/healthy-living/info-2020/states-mask-mandates-coronavirus.html (ac-cessed January 28, 2021).

[30] https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-considerations.html

[31] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

recovered from COVID-19 continue to take precautions to protect themselves and others, including wearing masks;[32] therefore, this mask requirement also applies to people who have recovered from COVID-19.

ACTION:

Until further notice, under 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b), unless excluded or exempted as set forth in this Order, a person must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States. A person must also wear a mask at any transportation hub that provides transportation within the United States.

Conveyance operators traveling into or within the United States may transport only persons wearing masks and must use best efforts to ensure that masks are worn when embarking, disembarking, and throughout the duration of travel. Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask.

As a condition of receiving controlled free pratique under 42 CFR 71.31(b) to enter a U.S. port, disembark passengers, and begin operations at any U.S. port of entry, conveyances arriving into the United States must require persons to wear masks while boarding, disembarking, and for the duration of travel. Conveyance operators must also require all persons to wear masks while boarding and for the duration of their travel on board conveyances departing from the United States until the conveyance arrives at the foreign destination, if at any time any of the persons onboard (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. These travel conditions are necessary to mitigate the harm of further introduction of COVID-19 into the United States.

Requiring a properly worn mask is a reasonable and necessary measure to prevent the introduction, transmission and spread of COVID-19 into the United States and among the states and territories under 42 U.S.C. 264(a) and 42 CFR 71.32(b). Among other benefits, masks help prevent dispersal of an infected person's respiratory droplets that carry the virus. That precaution helps prevent droplets from landing in the eye, mouth, or nose or possibly being inhaled into the lungs of an uninfected person, or from landing on a surface or object that an uninfected person may then touch and then touch his or her own or another's eyes, nose, or mouth. Masks also provide some protection to the wearer by helping reduce inhalation of respiratory droplets.

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe, where the controlling governmental authority: (1) requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Those requirements must provide the same level of public health protection as —or greater protection than—the requirements listed herein.

In accordance with 42 U.S.C. 264(e), state, local, territorial, and tribal authorities may impose additional requirements that provide greater public health protection and are more restrictive than

---

[32] https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

the requirements in this Order. Consistent with other federal, state, or local legal requirements, this Order does not preclude operators of conveyances or transportation hubs from imposing additional requirements, or conditions for carriage, that provide greater public health protection and are more restrictive than the requirements in this Order (e.g., requiring a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19 or imposing requirements for social distancing or other recommended protective measures).

This Order is not a rule within the meaning of the Administrative Procedure Act ("APA") but rather is an emergency action taken under the existing authority of 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), 71.32(b). In the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment and the opportunity to comment on this Order and the delay in effective date. Considering the public health emergency caused by COVID-19, it would be impracticable and contrary to the public's health, and by extension the public's interest, to delay the issuance and effective date of this Order. Similarly, the Office of Information and Regulatory Affairs has determined that if this Order were a rule, it would be a major rule under the Congressional Review Act, but there would not be a delay in its effective date as the agency has determined that there would be good cause to make the requirements herein effective immediately under the APA.

This order is also an economically significant regulatory action under Executive Order 12866 and has therefore been reviewed by the Office of Information and Regulatory Affairs of the Office of Management and Budget. The agency is proceeding without the complete analysis required by Executive Order 12866 under the emergency provisions of 6(a)(3)(D) of that Order.

If any provision of this Order, or the application of any provision to any carriers, conveyances, persons, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any carriers, conveyances, persons, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

To address the COVID-19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305 and 1546.105.

This Order shall be further enforced by other federal authorities and may be enforced by cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18 and 71.2.[33]

---

[33] While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID-19 Safety in Domestic and International Travel).

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

EFFECTIVE DATE:

This Order shall enter into effect on February 1, 2021, at 11:59 p.m. and will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

In testimony whereof, the Director of the Division of Global Migration and Quarantine at the Centers for Disease Control and Prevention, U.S. Department of Health and Human Services, has hereunto set his hand at Atlanta, GA, this 29th day of January 2021.


Martin S. Cetron, M.D.
Director, Division of Global Migration and Quarantine
Centers for Disease Control and Prevention

# EXHIBIT E

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

**Health and Safety Plan Summary:** Central Bucks School District (CBSD)

Initial Effective Date: July 28, 2021
Date of Last Review: August 27, 2021
Date of Last Revision: August 27, 2021
Date of Last Board Approval for Present Plan: August 31, 2021
**Effective Date for Present Plan: September 7, 2021**

**Introduction:** CBSD operations will be implemented in the same manner as those in place prior to the pandemic; this plan reflects exceptions to pre-pandemic operations that we will keep in place to promote general health and safety for all students, employees and visitors as well as remaining compliant with national, state, and local health guidance.

1. **How will the LEA, to the greatest extent practicable, support prevention and mitigation policies in line with the most up-to-date guidance from the CDC for the reopening and operation of school facilities in order to continuously and safely open and operate schools for in-person learning?**

   CBSD's Health and Safety Plan is informed by guidance from our federal, state, and local authorities. These include and are not limited to the Centers for Disease Control and Prevention (CDC), the Pennsylvania Department of Health (PADOH), the Pennsylvania Department of Education (PDE), and the Bucks County Health Department (BCHD).

   CBSD will continue to work in coordination with these agencies and our local partners to develop and refine expectations that meet all requirements.

   CBSD will revise this plan as necessary, based on changing guidance at any of these levels, at the required frequency. Such changes will be communicated to all stakeholders. Additionally, CBSD will monitor the recommendations of federal, state, and local authorities and make adjustments as necessary for all curricular, extra-curricular, and co-curricular programs including travel/field trips.

   The vaccination status of a person is private; therefore, employees will not ask, solicit, or engage in discussion around the vaccination status of another adult or student.

   **How will the LEA ensure continuity of services, including but not limited to services to address the students' academic needs, and students' and employees' social, emotional, mental health, and other needs, which may include student health and food services?**

   CBSD will continue to ensure safe learning and working environments for all students and employees.

   CBSD will continue to provide in-person instruction during the 2021-22 school year. Based on public health conditions and any related mandates/requirements, CBSD will remain positioned to quickly pivot between in-person and online instruction.

   CBSD will continue to ensure all students receive instruction that meets state and federal standards and have the necessary supports for success, including access to technology and connectivity.

As of September 7, 2021

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

CBSD will continue to offer a wide array of social and emotional wellness and health supports, including:

- access to licensed social workers, counselors, school psychologists, board certified behavior analysts, and administrators
- delivery of evidence-based SEL program for K-6 students
- resources for employees such as the Employee Assistance Plan provided through Penn Behavioral Health
- supports to meet needs of special populations, through the IEP/504 process and/or through our multi-tiered, multi-domain system of support
- access to training, time, support, and flexibility necessary for employees to prepare for successful instruction.

CBSD will provide proactive, clear communication to all families and employees.

2. **Use the table below to explain how the LEA will maintain the health and safety of students, educators, and other employees and the extent to which it has adopted policies, and a description of any such policy on each of the following safety recommendations established by the CDC.**

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| a. Universal and correct wearing of <u>masks</u>; | The district will implement the Masking Order issued by the PADOH effective September 7, 2021.<br><br>When the <u>PADOH Masking Order</u> expires, the district will revert to the metric below so long as there is no vaccination for children under 12 years old. |

UNTIL ALL K-6 ARE ABLE TO BE FULLY VACCINATED

| | Bucks County COVID-19 Case Data | 0-9 Cases per 100,000 and <5% positivity | 10-49 Cases per 100,000 or <5-7.9% positivity | 50-99 Cases per 100,000 or <8-9.9% positivity | >100 cases per 100,000 or >10% positivity |
|---|---|---|---|---|---|
| ELEMENTARY | Indoor | Recommended | Required | Required | Required |
| SECONDARY | Indoor | Recommended | Recommended | Recommended | Recommended |

*Note:
As part of Targeted Temporary Mitigation (TTM), this plan may be reviewed and/or revised at each regularly scheduled school board meeting. The district will analyze existing data and determine the most appropriate next steps in consultation with the BCHD as needed.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|

Once vaccinations are available for children under 12 years of age, and families have had time for their children to become fully vaccinated, the district will implement the following metric to determine masking in schools:

| ONCE ALL K-6 ARE ABLE TO BE FULLY VACCINATED | | | | | |
|---|---|---|---|---|---|
|  | Bucks County COVID-19 Case Data | 0-9 Cases per 100,000 and <5% positivity | 10-49 Cases per 100,000 or <5-7.9% positivity | 50-99 Cases per 100,000 or <8-9.9% positivity | >100 cases per 100,000 or >10% positivity |
| ELEMENTARY | Indoor | Recommended | Recommended | Required | Required |
| SECONDARY | Indoor | Recommended | Recommended | Recommended | Recommended |

*Note:
As part of Targeted Temporary Mitigation (TTM), this plan may be reviewed and/or revised at each regularly scheduled school board meeting. The district will analyze existing data and determine the most appropriate next steps in consultation with the BCHD as needed.

Masking expectations (outlined in the tables above) will be based upon the confirmed positive case count in Bucks County. These expectations will also apply to visitors of district facilities.

Masking expectations will continue to be guided by the recommendations of local health officials based upon the Bucks County confirmed positive case and vaccine availability/eligibility.

Regardless of district masking expectations (as outlined in the masking expectations chart), due to federal requirements, masks are required while on district transportation.

The district does reserve the right to require masks if the confirmed positive case counts rise in the community or in the CBSD school environment (as indicated above). Mask requirements could vary from building to building and decisions will be made in collaboration with BCHD.

During Times of REQUIRED MASKING:
- All students, employees, and visiting guests, regardless of vaccination status, are required to wear a mask WHILE INDOORS on district grounds.
- Exceptions:
  - While participating in indoor/outdoor sports or extra-curricular activities
  - While eating, drinking, or snacking (during such times, the mask will be removed and then put back in place when finished).
  - While working in isolation within an enclosed office, classroom, bus/van, or other district vehicle.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

Students, employees, and visiting guests, regardless of vaccination status, will NOT be required to mask while outside on district grounds. This applies to outdoor times during the instructional day (i.e., recess, PE classes, etc.), sports, extra-
- and co-curricular meetings, activities, and events. Masking outdoors is always optional.
- The correct wearing of masks includes covering both the nose and the mouth.
- Face shields do not qualify as face masks.

CBSD will accept student mask exemptions. Families must:
- Complete the CBSD Student Mask Exemption Form
- Return the signed exemption form to the principal
- A student's nurses, teachers, Before/After Care, and bus drivers will be notified of mask exemptions.

CBSD will accept employee mask exemptions. Employees must:
- Complete the CBSD Employee Mask Exemption Form (forthcoming)
- Return the signed exemption form to the principal

CBSD will accept visitor mask exemptions. Visitors must:
- Complete the CBSD Visitor Mask Exemption Form (forthcoming)
- Return the signed exemption form to the principal


During Times of MASK RECOMMENDED (INDOORS):
- Any student exhibiting symptoms in school will be provided with a mask by the nurse. If a parent of a symptomatic student does not want that student to be masked, that student must be picked up by the parent, and will not be able to return to school until their symptoms are resolved and they are fever free for 24 hours without medication.

If a person is symptomatic OR has tested positive, they must remain home for a minimum of three days from onset or positive test date. If symptoms resolve AND if fever-free for 24 hours, then they are able to return to school/work and must mask through the 7th day (no mask exemptions), unless directed otherwise by the BCHD.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| b.  Modifying facilities to allow for <u>physical distancing</u> (e.g., use of cohorts/podding); | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments. CBSD will continue to rely on the BCHD's guidance to design safe instructional and workspaces for all individuals. Specifically, physical distancing measures will continue to be maximized to the greatest extent possible, and where it is practical to do so. This includes, but is not limited to the following:<br><br>a.  Maintaining a minimum of three feet of separation (wherever possible) in classrooms, cafeterias, and common spaces.<br>b.  Maintaining distancing measures in hallways, including wherever possible one way halls, and maintaining spacing while moving throughout the building<br>c.  School cafeterias will return to normal operations; however, in K-6, seating charts will be maintained<br>d.  Bus riders from the same household will be seated together when possible. |
| c.  <u>Handwashing and respiratory etiquette;</u> | Handwashing and respiratory etiquette will continue to be promoted. Instructional signs regarding appropriate handwashing and respiratory etiquette will continue to be strategically placed in appropriate spaces.<br><br>All individuals will continue to be encouraged and reminded to sanitize or wash their hands on a frequent basis. Hand sanitizer will continue to be made available in all common areas, hallways, and/or lobby areas where sinks for handwashing are not available, in order to encourage frequent use. CBSD will continue to post signs in highly visible locations that promote everyday protective measures/hygiene and how to stop the spread of germs. CBSD will continue to include proper personal hygiene in program curricula.' |
| d.  <u>Cleaning</u> and maintaining healthy facilities, including improving <u>ventilation;</u> | Established cleaning and ventilation protocols will continue to be implemented during the 2021-2022 school year.<br><br>All cleaning products are approved by the EPA for COVID-19 mitigation. CBSD will continue to follow proper cleaning and disinfection protocols following CDC, EPA, and manufacturer guidelines.<br>• Sanitizing spray will continue to be provided in classrooms and high traffic areas.<br>• Daily cleaning and sanitization of high touch surfaces, classrooms and desktops will continue during the 2021-2022 school year.<br><br>Hand sanitizing stations will continue to be maintained throughout all buildings. |

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| e. <u>Contact tracing</u> in combination with <u>isolation</u> and <u>quarantine</u>, in collaboration with the State and local health departments; | CBSD will continue to work in partnership with the BCHD for all COVID-19-related case investigation and contact tracing. <br><br> In accordance with BCHD Covid positive case reporting guidelines, CBSD strongly recommends that families report positive tests to the school. Parent reporting will expedite the ability of the school to respond as outlined in the CBSD Health and Safety Plan. <br><br> When a school receives a confirmed positive case, an email will be sent to all members of the classroom(s) and buses/vans that student occupies (including employees). <br>• The FEMO department will conduct an AICD (All-Inclusive Cleaning & Disinfection) of that room. <br>• CBSD will notify the parents/guardians of students who are in the same class(es)/bus as a person who has tested positive for COVID-19. <br>• CBSD is required report confirmed student and employee cases to BCDH. |
| e. <u>Contact tracing</u> in combination with <u>isolation</u> and <u>quarantine</u>, in collaboration with the State and local health departments; | In the event there is evidence of potential COVID-19 spread within school, BCDH will advise whether further mitigation strategies should be taken. "Targeted Temporary Mitigation" (TTM) strategies might include but are not limited to physical distancing, cleaning/disinfecting, and virtual learning. These strategies will be targeted to just the concerned classrooms, groups, or schools/district buildings where potential spread of COVID-19 is of concern. These strategies will be temporary meaning they will be ended when the potential spread of virus in that case is expired. <br><br> If the number of confirmed positive tests in any classroom reaches three cases within a five-day period of the roster at any point in time, the class will be required to mask for five days from the day the last positive case was reported. The FEMO department will conduct an AICD of the classroom. <br><br> An isolation area will be available in each school for students exhibiting symptoms while in school. |

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| | In CBSD, when students, employees, or visiting guests, regardless of vaccination status, exhibit symptoms of illness during instructional hours, they will report to the Health Office to be assessed by the school nurse. The school nurse will do some or all of the following:<br><br>• Provide a new mask and a concealed bag for the old mask (if not disposable).<br>• Isolate the student<br>• Call their parent or guardian<br>• Return student to class (e.g., if known allergy is causing COVID-19-like symptoms) with mask and reminder of proper masking, hand cleaning/sanitizing, and respiratory etiquette practices.<br>• Send student home with directions and return to school directions from BCDH.<br><br>Procedures Following Exposure (Close Contact):<br>If a CBSD student, employee, or guest is exposed to someone who is positive for COVID-19, principals and nurses will work with BCHD and parents to determine safety protocol needed:<br>• If SYMPTOMATIC, regardless of level of exposure, the student, employee, or visiting guest is to remain home for a minimum of three days from onset. If symptoms resolve AND if fever-free for 24 hours, then they are able to return to school/work and must mask through the 7th day (no mask exemptions), unless directed otherwise by the BCHD.<br>• If ASYMPTOMATIC and the exposure was temporary (e.g., sitting near the person in class), the student, employee, or visiting guest is able to continue to come to school so long as they remain asymptomatic.<br>• If ASYMPTOMATIC and the exposure is ONGOING (e.g., household exposure), the student, employee or visiting guest is able to return to school but must wear a mask for 7 days from date of last exposure to the last household member to become positive or have symptoms. If any symptoms develop at any time, the student, employee, or visiting guest is to remain home for a minimum of three days from onset. If symptoms resolve AND if fever-free for 24 hours, then they are able to return to school/work and must mask through the 7th day (no mask exemptions), unless directed otherwise by the BCHD.<br>• "In the K–12 indoor classroom setting, the close contact definition excludes students who were within 3 to 6 feet of an infected student (laboratory-confirmed or a clinically compatible illness) if both the infected student and the exposed student(s) correctly and consistently wore well-fitting masks the entire time" (Appendices | CDC). Therefore, they will not be reported to BCHD. |

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| f.  Diagnostic and screening testing; | At the recommendation of the BCHD, CBSD will no longer require individuals to attest formally to symptom tracking for COVID-19 upon entering district buildings.<br><br>At the recommendation of the BCHD, CBSD will no longer require contractors to complete the daily close contact tracking form. CBSD will instead regularly communicate best practices for health and personal hygiene to all stakeholders to reinforce healthy instructional and work environments.<br><br>The district will provide access to testing through their partnership with Doylestown Hospital for CBSD employees and students. |
| g. Efforts to provide vaccinations to school communities; | CBSD strongly encourages all individuals to be vaccinated.<br><br>CBSD will continue to partner with federal, state, local, and health care agencies regarding opportunities to receive the COVID-19 vaccination.<br><br>CBSD will collaborate with local pharmacies and share vaccination opportunities with eligible students and employees. |
| h.  Appropriate accommodations for students with disabilities with respect to health and safety policies; | CBSD is a high-quality provider of services for individuals with disabilities. The district will continue to meet those needs through the IEP/504 process and the multi-tiered, multi-domain system of support model. The district will continue to design and follow any individualized health and safety plan for the students we serve. CBSD will continue to train employees and contractors on Universal Precautions.<br><br>CBSD will communicate best practices for health and personal hygiene to all stakeholders to reinforce healthy instructional and work environments.<br><br>CBSD will continue to partner with federal, state, local, and healthcare agencies to promote and offer opportunities to receive the COVID-19 vaccination. |
| i.  Coordination with state and local health officials. | CBSD will rely on best practices, informed by federal, state, and local guidance, to design and implement high-quality, student-centered instructional environments.<br><br>Specifically, CBSD will rely on local health authority guidance to design safe instructional and workspaces for all individuals.<br><br>CBSD will continue to participate in discussion forums and planning with federal, state, and local health authorities, and among local school entities. |

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

**Health and Safety Plan Governing Body Affirmation Statement**

The Board of Directors/Trustees for the **Central Bucks School District** reviewed and approved the Health and Safety Plan on **August** 31**, 2021**.

The plan approved by a vote of:

_____ **Yes**

_____ **No**

Affirmed on: **August 31, 2021**

By:

_____

(*Signature\* of Board President*)

_____

(*Print Name of Board President*)

*Electronic signatures on this document are acceptable using one of the two methods detailed below.

**Option A:** The use of actual signatures is encouraged whenever possible. This method requires that the document be printed, signed, scanned, and then submitted.

**Option B**: If printing and scanning are not possible, add an electronic signature using the resident Microsoft Office product signature option, which is free to everyone, no installation or purchase needed.

Case# 2021-02825-3 - JUDGE:50 Received at County of Bucks Prothonotary on 09/10/2021 9:15 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Mr. J. Chadwick Schnee, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that this 10th day of September 2021, I have served the attached Amended

Complaint to the persons listed below by via e-mail and U.S. First Class mail:

Michael I. Levin, Esquire
Michael Sweeney, Esquire
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
mlevin@levinlegalgroup.com
msweeney@levinlegalgroup.com

/s/ J. Chadwick Schnee, Esq.
J. Chadwick Schnee (PA 306907)